PR/USAO#2021R00148

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **CRIMINAL NO.** RDB 25 cr 270 |
| | : | |
| **EDWARD MCCORKLE,** | : | **(Wire Fraud Conspiracy, 18 U.S.C. §** |
| | : | **1349; Forfeiture, 18 U.S.C.** |
| **Defendant.** | : | **§ 981(a)(1)(C); 21 U.S.C. § 853(p); 28** |
| | : | **U.S.C. § 2461(c))** |
| | : | |

USDC- BALTIMORE
'25 SEP 9 PM3:05

...oOo...

## INFORMATION

### COUNT ONE
### (Wire Fraud Conspiracy)

The United States Attorney for the District of Maryland charges that:

At all times relevant to the Information, unless otherwise stated:

1.  Defendant **EDWARD MCCORKLE ("MCCORKLE")** was a resident of Baltimore County, Maryland.

2.  **MCCORKLE** incorporated a business with the State of Maryland called Real Transitions LLC ("Real Transitions"). **MCCORKLE** was listed as the registered agent of the business.

3.  Real Transitions maintained an account at Municipal Employees Credit Union ("MECU"), a federally insured financial institution, with an account number ending in 8417 ("the 8417 Account"). **MCCORKLE** was the sole signatory on the 8417 Account.

4.  Cross River Bank, headquartered in Fort Lee, New Jersey, was a federally insured financial institution and was a United States Small Business Administration ("SBA") Preferred Small Business Lender and participated as a lender in the Paycheck Protection Program ("PPP").

1

5.      Cross River Bank used a server located outside of the District of Maryland for the purpose of receiving PPP loan applications.

**The Paycheck Protection Program**

6.      The PPP was a COVID-19 pandemic relief program administered by the SBA that provided forgivable loans to small businesses for job retention and certain other expenses. The PPP permitted participating third-party lenders to approve and disburse SBA-backed PPP loans to cover payroll, fixed debts, utilities, rent/mortgage, accounts payable and other bills incurred by qualifying businesses during, and resulting from, the COVID-19 pandemic. PPP loans were fully guaranteed by the SBA.

7.      To obtain a PPP loan, a qualifying business had to submit a PPP loan application, which was signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications to be eligible to obtain the PPP loan, including that the business was in operation and either had employees for whom it paid salaries and payroll taxes or paid independent contractors. A business applying for a PPP loan was required to provide documentation showing its payroll expenses and substantiating that the borrowing business was in operation before or on February 15, 2020, such as filed federal income tax documents.

8.      PPP loan applications were electronically submitted or caused to be submitted by the borrower and received through SBA servers located outside of the District of Maryland.  Once approved, the business received the PPP loan proceeds via an electronic funds transfer from the third-party lender to a financial account under the control of the business.

9.      The proceeds of a PPP loan could be used for certain specified items, such as payroll costs, costs related to the continuation of group health care benefits, or mortgage interest payments. The proceeds of a PPP loan were not permitted to be used by the borrowers to purchase consumer

goods, automobiles, personal residences, clothing, jewelry, to pay the borrower's personal federal income taxes, or to fund the borrower's ordinary day-to-day living expenses unrelated to the specified authorized expenses.

## The Conspiracy and the Scheme to Defraud

10.    Beginning in and around May 2020 and continuing through in and around April 2021, in the District of Maryland and elsewhere, the defendant,

### EDWARD MCCORKLE,

knowingly and willfully, conspired with CO-CONSPIRATOR #1 and others known and unknown, to knowingly and willfully execute and attempt to execute a scheme and artifice to defraud the SBA and Cross River Bank, and to obtain and attempt to obtain money by means of materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing and attempting to execute the scheme to defraud, did knowingly and willfully transmit and cause to be transmitted by means of wire communications, in interstate and foreign commerce, writings, signs, signals, pictures, and sounds (the "scheme to defraud"), in violation of 18 U.S.C. § 1343.

## The Object of the Scheme to Defraud

11.    It was the object of the scheme to defraud for **MCCORKLE** to personally enrich himself by fraudulently obtaining and attempting to obtain COVID-19 relief funds for his own personal use and benefit, and for the personal benefit and use of his associates, including to purchase and renovate real estate and other unauthorized expenditures.

## Manner and Means of the Scheme to Defraud

It was part of the conspiracy and scheme to defraud that:

12.    On or about May 20, 2020, **MCCORKLE** filed Articles of Reinstatement with the State of Maryland for Real Transitions.

3

13.     **MCCORKLE** used Real Transitions for the purpose of applying for COVID-19 related benefits, such as a PPP loan.

14.     **MCCORKLE**, CO-CONSPIRATOR #1, and others known and unknown to the Grand Jury, conspired to submit false materials, including a false PPP loan application and four false 2019 IRS Form 941 to obtain a PPP loan for Real Transitions.

15.     The fabricated and false IRS Forms 941 reflected that that Real Transitions LLC had 15 employees and withheld over $100,000.00 in federal income taxes in 2019. In fact, in 2019 Real Transitions did not pay any such wages or withhold any amount in federal income taxes.

16.     In order to obtain PPP benefits, **MCCORKLE** made and caused to be made materially false and fraudulent pretenses, representations, and promises to Cross River Bank, including false representations regarding the number of employees of the business and the average monthly payroll of the business.

17.     On or about May 26, 2020, **MCCORKLE's** fraudulent and false representations and submissions caused Cross River Bank to fund the PPP loan, and distribute $246,500.00 to the 8417 Account controlled by **MCCORKLE**.

18.     **MCCORKLE** paid CO-CONSPIRATOR #1 kickbacks totaling $49,300, reflecting approximately 20 percent of the PPP loan amount received by Real Transitions, in exchange for CO-CONSPIRATOR #1's assistance in connection with the PPP loan application for the business.

19.     **MCCORKLE** engaged and attempted to engage in financial transactions in accounts at various financial institutions that received fraudulent PPP funds, including the 8417 Account.

20.    **MCCORKLE** falsely promised to spend PPP funds on allowable expenses such as payroll, business rent and business utilities when he intended to spend the funds on non-allowable expenses such as the purchase and rehabilitation of real estate.

18 U.S.C. § 1349

## FORFEITURE ALLEGATION

The United States Attorney for the District of Maryland further finds that:

1.    Pursuant to Federal Rule of Criminal Procedure 32.2, notice is hereby given to the defendant that the United States will seek forfeiture as part of any sentence in accordance with 18 U.S.C. §§ 981(a)(1)(C) and 982, 21 U.S.C. § 853(p), and 28 U.S.C. § 2461(c), as a result of the defendant's conviction under the offense in Count One of this Information.

### Wire Fraud Forfeiture

2.    Upon conviction of the offense set forth in Count One of this Information, the defendant,

### EDWARD MCCORKLE

shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the scheme to defraud.

### Property Subject to Forfeiture

4.    The property to be forfeited includes, but is not limited to, a money judgment in the total amount of proceeds the defendant obtained as the result of the scheme to defraud and/or the property involved in the money laundering.

### Substitute Assets

5.    If any of the property described above, as a result of any act or omission of the defendant:

    a.    cannot be located upon the exercise of due diligence;

    b.    has been transferred or sold to, or deposited with, a third party;

    c.    has been placed beyond the jurisdiction of the court;

    d.    has been substantially diminished in value; or

e.    has been commingled with other property which cannot be divided

without difficulty,

the United States shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C.

§ 853(p), as incorporated by 18 U.S.C. § 982(b) and 28 U.S.C. § 2461(c).

18 U.S.C. § 981(a)(1)(C)
18 U.S.C. §§ 982(a)(1), (b)
21 U.S.C. § 853(p)
28 U.S.C. § 2461(c)
Fed. R. Crim. P. 32.2(a)

*Kelly O. Hayes*

Digitally signed by
PAUL RILEY
Date: 2025.09.08
14:44:51 -04'00'

Kelly O. Hayes
United States Attorney

Date: September 8, 2025

7