

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

*Paul E. Budlow*          *Suite 400*        *DIRECT: 410-209-4917*
*Assistant United States Attorney*    *36 S. Charles Street*     *MAIN: 410-209-4800*
*Paul.Budlow@usdoj.gov*       *Baltimore, MD 21201-3119*    *FAX: 410-962-3091*

February 3, 2026

**VIA ECF**

The Honorable Richard D. Bennett
United States District Judge
United States District Court
for the District of Maryland
101 West Lombard Street
Baltimore, MD 21201

       Re:     *United States v. Edward McCorkle*,
            Criminal No. RDB-25-0270

Dear Judge Bennett:

The Government writes this letter in advance of the sentencing of Edward McCorkle, which is currently scheduled for February 5, 2026, at 11:00 am. On September 15, 2025, the Court accepted Defendant's guilty plea to Count One of the Information, charging him with Wire Fraud Conspiracy, in violation of 18 U.S.C. §§ 1343, 1349.

As set forth more fully below, the Government requests that the Court sentence Defendant to 27 months' imprisonment, to be followed by three years of supervised release, and order restitution in the amount of $523,700 to the victims in this case.

## I. Background

As detailed in the parties' plea agreement filed September 13, 2025 (ECF No. 13) and the Presentence Investigation Report (PSR) filed November 12, 2025 (ECF No. 18), for over a period of 9 months beginning in May 2020 and continuing through February 2021, the defendant and his co-conspirators engaged in a scheme to defraud Cross River Bank, and the United States Small Business Administration (SBA) to obtain multiple fraudulent loan for various purported businesses owned by McCorkle, under the Paycheck Protection Program (PPP) which was part of the Coronavirus Aid, Relief, and Economic Security (CARES) Act and the Economic Injury Disaster Loan (EIDL) program.

McCorkle ultimately obtained $523,700 as part of this scheme and attempted to obtain a total amount of $946,500. He used the fraudulently obtained funds for multiple impermissible purposes, including numerous personal expenses, large cash withdrawals, and to purchase and rehabilitate real estate in Baltimore City.

1

## II. Guidelines Computation

As calculated in the Presentence Investigation Report ("PSR") (ECF No. 18), the Defendant's total offense level as to Count One is 18, and his criminal history category is II. PSR at 99. Accordingly, the guidelines range as to Count One is 30-37 months' imprisonment. The government agrees with the calculation of the U.S. Sentencing Guidelines as set forth in the PSR. PSR at 9.

## III. Sentencing Factors Under 18 U.S.C. § 3553(a)

The sentencing factors under 18 U.S.C. § 3553(a) support a sentence of 27 months' imprisonment.

Such a sentence is necessary to reflect the seriousness of the offense and protect the public from further crimes of the Defendant, as well as to afford adequate deterrence, promote respect for the law, and provide just punishment. It also takes into account Defendant's history and characteristics, including his criminal history.

Regarding the nature and circumstances of the offense, there is no question that Defendant's offense is serious. During the most traumatic global pandemic in a century, Defendant stole more than $523,000 in public funds that were intended to prop up our nation's small businesses so that they could avoid economic collapse. He saw an opportunity for "free money" from the Government, and he took it—obtaining cash from PPP loans and EIDL advance grants.

Defendant lied on loan applications. He offered to send others to work with his co-conspirators in connection with obtaining additional fraudulent PPP loans to further perpetuate CARES Act fraud. He paid his co-conspirators kickbacks for his role in connection with the scheme.

What's more, Defendant's offense was not the result of a momentary lapse of judgment by an otherwise law-abiding citizen. It was not a split-second decision made under financial duress. To the contrary, when the opportunity arose, Defendant wrongfully took advantage of a relief program meant to aid victims of an unprecedented public health and economic crisis by obtaining PPP loans and EIDL funds that he was not otherwise entitled to receive through fraud. His criminal activity lasted nearly a year.

Defendant's choice to misappropriate PPP funds funneled critical resources away from legitimate businesses that did not survive the pandemic. Indeed, in the early days of the COVID-19 pandemic, people stayed home, businesses closed their doors, and workers were laid off. America was effectively shut down. In the face of chaos and uncertainty, the Government moved quickly to establish pandemic relief programs, like PPP and EIDL, for suffering people and businesses. And to get money quickly to people who needed it most, these pandemic relief programs relied on applicants to tell the truth. But in the face of this crisis, Defendant did the opposite—he saw an opportunity to enrich himself based on lies, and he took it.

Simply put, these pandemic loan programs were intended to be a lifeline, not a payday. Defendant's actions were self-serving and inexcusable. The nature and circumstances of the offense warrant the Government's recommended sentence.

So too does the Government's recommended sentence reflect the seriousness of Defendant's misconduct, provide just punishment, and promote respect for the law. The PPP was

designed to be a safety net to keep the nation's small business in operation during the most significant global pandemic in 100 years. Unfortunately, due to the conduct of people like Defendant, a staggering amount of pandemic relief funds did not reach the businesses and employees that needed those funds most. The SBA Office of Inspector General estimates that as much as 17% of the disbursements from pandemic-relief programs like the PPP went to fraudulent applicants like Defendant.[1] Indeed, the PPP had a finite pool of money; during the first round of the PPP, the program was depleted in just 13 days.[2] Given the high levels of fraud in connection with PPP funds, there is a particularly substantial need to promote respect for the law and provide just punishment for the offense.

The need to avoid unwarranted sentencing disparities is also important in this case. While no two defendants are precisely similarly situated, and the facts and circumstances of every case are different,[3] it still nevertheless may be instructive for the Court to consider sentences judges (including the Court) have in the past imposed in connection with cases involving pandemic fraud such as this one.

Simply put, pandemic loan fraud cases involving criminal conduct similar to the offense conduct at issue here have routinely yielded significant sentences in this District, as set forth below:

- *United States v. Sary*, Crim. No. RDB-23-344 (seven year sentence imposed on defendant with no criminal history who was responsible for over $17 million dollars in fraud). Sary's sentencing guideline range was 108 to 135 months' imprisonment. He had no criminal history.

- *United States v. Glenn*, Criminal No. RDB-23-0027 (65 months' imprisonment imposed on McCorkle's co-conspirator, whose conduct caused the loss to victims of over three million dollars in PPP and EIDL funds.

- *United States v. Walker*, Crim. No. RDB-22-290 (24 months' imprisonment and 6 months' home confinement imposed on defendant who was responsible $262,252 in fraud). Walker's sentencing guidelines range was 30-37 months' imprisonment.

- *United States v. Hopkins*, Crim. No. RDB-23-316 (24 months' imprisonment and 1 year home confinement imposed on defendant with no criminal history who was responsible for $1,018,224 in fraud). Hopkins' sentencing guidelines range was 41-51 months' imprisonment. He had no criminal history.

---

[1] *See* Small Business Administration, COVID-19 Pandemic EIDL and PPP Loan Fraud Landscape Report, *available at* https://www.sba.gov/document/report-23-09-covid-19-pandemic-eidl-ppp-loan-fraud-landscape ("We estimate that SBA disbursed over $200 billion in potentially fraudulent COVID-19 EIDLs, EIDL Targeted Advances, Supplemental Targeted Advances, and PPP loans. This means at least 17 percent of all COVID-19 EIDL and PPP funds were disbursed to potentially fraudulent actors.")

[2] *See* PBS Newshour, It took 13 days for the Paycheck Protection Program to run out of money. What comes next?, *available at* https://www.pbs.org/newshour/politics/it-took-13-days-for-the-paycheck-protection-program-to-run-out-of-money-what-comes-next

[3] *See, e.g.*, *United States v. Friend*, 2 F.4th 369, 382–83 (4th Cir. 2021) ("Courts have repeatedly made clear that comparisons of sentences may be treacherous because each sentencing proceeding is inescapably individualized.").

- *United States v. Qureshi*, Crim. No. JKB-22-0330 (year and a day sentence imposed on defendant with no criminal history who was responsible for $250,723 in fraud). Qureshi's sentencing guidelines range was 12-18 months' imprisonment. He had no criminal history.

- *United States v. Gillespie*, Crim. No. RDB-23-0321 (48 month sentenced imposed on defendant with no criminal history who was responsible for $138,000 in fraud and significant bribery scheme resulting in losses of over $1,250,000). Gillespie's sentencing guidelines range was 57-71 months' imprisonment. He had no criminal history.

The Government's recommended sentence of 27 months' imprisonment here appropriately reflects the differences among Defendant and these individuals while avoiding unwarranted disparities.

It is notable too that pandemic loan fraud cases involving criminal conduct similar to the offense conduct at issue here—including submission of fraudulent pandemic loan applications containing fake IRS forms and false information regarding nonexistent businesses during a time of national crisis—have routinely yielded significant sentences. *See, e.g.*, *United States v. Joseph Marsell Cartlidge, Eric Alexander McMiller, and David Christopher Redfern*, 1:20-CR-340 (M.D.N.C. 2022) (receiving 72 months, 66 months, and 60 months of imprisonment, respectively, for submitting fraudulent PPP and EIDL applications with false information and fake tax forms, fraudulently seeking approximately $2.7 million and obtaining $1.2 in loans); *United States v. Lola Kasali*, 4:20-MJ-1106 (S.D. Tex. 2022) (receiving 70 months of imprisonment for submitting two fraudulent PPP loan applications with false information and fake tax forms, fraudulently obtaining $1.9 million in loans); *United States v. Tarik Freitekh*, 3:20-CR-00435 (W.D.N.C. 2022) (receiving 87 months of imprisonment for submitting fraudulent PPP applications, and fraudulently obtaining $1.75 million in loans); *United States v. Adam D. Arena*, 21-MJ-05134 (W.D.N.Y. 2022) (receiving 66 months of imprisonment for his role in fraudulently obtaining and laundering approximately $950,000 in pandemic loans); *United States v. Joshua Bellamy*, 21-CR-60064 (S.D. Fla. 2021) (receiving 37 months of imprisonment for obtaining and laundering a $1,246,565 PPP loan and paying co-conspirator $311,000 kickback in exchange for preparing and submitting application); *United States v. Hassan Kanyike*, 21 Cr. 50269 (C.D. Cal. 2021) (receiving sentence of 51 months for after obtaining 4 PPP loans valued at approximately $1,000,000); *United States v. Leslie D. Bethea*, 22 Cr. 52 (E.D. Tenn. 2022) (defendant on federal supervised release at time of the offense received 78 month sentence in connection with $20,805 PPP loan, which she used to finance a trip to a resort in Florida).

Finally, regarding Defendant's history and characteristics, it is notable that the instant offense is not Defendant's first federal conviction. It is also true that the crime is non-violent, and that Defendant has consistently shown the desire and ability to work. While these points merit consideration by the Court in determining the appropriate sentence, they do not support the variant sentence requested by the defense.

### IV. The Government's Sentencing Recommendation

In light of all of the factors set forth above, the Government recommends that the Court sentence the Defendant to a term of imprisonment of 27 months' imprisonment to be followed by three years' supervised release. Such a sentence would be sufficient but not greater than necessary to accomplish the purposes of sentencing under the Section 3553(a) factors.

The Government also asks that the Court order restitution in the amount of $523,700[4] to be due and payable immediately—broken down as follows:

- Cross River Bank: $246,500; and
- Small Business Administration: $277,000.

Respectfully submitted,

Kelly O. Hayes
United States Attorney

By: _____
Paul E. Budlow
Assistant United States Attorney

cc:    Matthew Zernhelt

---

[4] Defendant agreed to pay restitution of at least $523,700 in the parties' plea agreement. ECF No. 13 ¶ 19.